IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

EASTERN DIVISION

| | |
|---|---|
| JO ANN WILEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HARTFORD LIFE AND ACCIDENT )<br>INSURANCE COMPANY, )<br>)<br>Defendant. )<br>) | CIVIL ACTION NO.:<br>3:07-CV-00058-MHT-TFM |

## RESPONSE TO DEFENDANT'S MOTION TO QUASH AND FOR PROTECTIVE ORDER

Comes now Plaintiff, and objects to Defendant's Motion to Quash three notices of deposition and its Motion for Protective Order.

This action is a straight-forward complaint, brought under the Employee Retirement Income Security Act, (ERISA), regarding the Defendant's decision to discontinue long-term benefits to the Plaintiff, after she was initially awarded said benefits. On June 26th, 2007,[1] Plaintiff noticed three depositions, within the discovery time-frame established by the Court. These are the only depositions the Plaintiff believes are necessary to prosecute her claims.

---

[1] The certificate of service was erroneously dated June 23, 2007 and Defendant's counsel informs the undersigned that the postmark was June 26, 2007, as is the email referenced infra.

The noticed depositions were those of the Defendant and two of the Plaintiff's treating physicians at the time her disability benefits were discontinued by the Defendant. Defendant's motion seeks to preclude this discovery on two grounds, first; that the deposition notices are untimely, second; that controlling case law precludes the discovery altogether.

Regarding Defendant's first claim, the deposition notices were not untimely and were given with reasonable notice to the Defendant. On June 22, 2007, two weeks prior to the discovery cut-off date, Plaintiff's counsel spoke with Defendant's counsel about scheduling depositions. During that conversation, Defendant's counsel informed Plaintiff's counsel that Defendant would not agree to any depositions, based on its belief that case law precluded any discovery in cases like the one sub judice. Plaintiff's counsel informed Defendant's counsel that he would notice the depositions and await Defendant's objection to same. This conversation was memorialized in e-mail correspondence between Plaintiff's counsel and Defendant's counsel on June 26, 2007, early in the morning. See (Exhibit "A" attached).[2]

The depositions of Drs. Mathews and Adams were noticed for July 5, 2007, and the deposition of Defendant was noticed for July 6, 2007. The nine and ten day notice given is clearly "reasonable" as contemplated by Rule 30 of the Federal

---

[2] The redacted portion of the email is a settlement demand.

Rules of Civil Procedure. Furthermore, as Plaintiff's counsel had already discussed the matter with Defendant's counsel, and the dates noticed were the last possible dates under the Court's Scheduling Order, Defendant's claim of "unfair surprise" does not have merit.

Defendant's second reason to preclude the discovery is that it is not allowed under Eleventh Circuit case law. Before addressing the merits of Defendant's position, a brief discussion of why the discovery is sought may be helpful. On December 6, 2005, Defendant informed Plaintiff that she would no longer receive disability benefits. (See Exhibit "B" attached). Defendant, in part, made its decision on comments it attributes to Dr. Adams.

On December 16, 2005, Dr. Adams sent a letter to Defendant, wherein he indicates that his point of view, "has not been satisfactorily conveyed." (See Exhibit "C" attached). He also indicated that Plaintiff had shown "clinical deterioration" since his earlier correspondence with Defendant. Notwithstanding this information, on February 28, 2006, Defendant discontinued Plaintiff's benefits. (See Exhibit "D" attached).

Dr. Adams testimony, regarding his opinion of Plaintiff's ability to engage in gainful employment activity is clearly relevant to this matter. Obviously, Defendant's reasons for discontinuing the benefits are relevant as well, which is

why the deposition of Defendant is necessary to discover all the facts regarding its investigation of Plaintiff's eligibility for continued disability benefits.

Regarding Defendant's substantive claims in its Motion, the deposition of Defendant is necessary to determine if the "arbitrary and capricious" review, sought by Defendant in this case, pursuant to <u>Jett v. Blue Cross and Blue Shield of Ala.</u>, 890 F.2d 1137 (11th Cir. 1989) and its progeny, apply, at all. The Eleventh Circuit has held that a less deferential standard may apply if the claimant's file is analyzed by the insurer and the insurer makes claims determinations. <u>See Anderson v. Blue Cross/Blue Shield of Alabama</u>, 907 F.2d 1072 (11th Cir.1990). Defendant's February 28, 2006, letter to Plaintiff seams to indicate that Defendant undertook this type of determination. At a minimum, discovery should be allowed to determine if the "arbitrary and capricious" standard should apply.

Even if the "arbitrary and capricious" standard does apply, the depositions of Plaintiff's physicians would indicate their opinion of Plaintiff's ability to work, <u>at the time the Defendant made its decision</u>. As Defendant, in its correspondence with Plaintiff, references Dr. Adams' opinion as a reason to discontinue benefits, Dr. Adams testimony about his opinion and what he actually told Defendant, is clearly relevant, even under the "arbitrary and capricious" standard.

There can be no better evidence of Plaintiff's medical condition at a particular time than the testimony of her treating physicians. As Plaintiff's medical

condition is dispositive as to the validity of Defendant's decision to terminate benefits, the testimony of her physicians should be allowed.

As such, Defendant's Motion to Quash and for Protective Order is inappropriate and Plaintiff moves this Honorable Court to deny the same.

                                                    s/ James B. Douglas, Jr._____
James B. Douglas, Jr.
Attorney for Plaintiff
P.O. Box 1423
Auburn, AL 36831-1423
334-821-1596
Ala. Bar #8935-u83j

## CERTIFICATE OF SERVICE

I hereby certify that I have served the forgoing on the below listed by use of this Court's electronic filing system.

                                                    /s/James B. Douglas, Jr.\_\_\_\_
James B. Douglas, Jr.
Attorney for Plaintiff


William B. Wahlheim, Jr.
John David Collin
Grace Robinson Murphy
1901 6th Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
(205) 254-1000

# EXHITBIT A

# James Douglas

**From:** Grace Murphy [MURPHG@maynardcooper.com]
**Sent:** Tuesday, June 26, 2007 9:40 AM
**To:** James Douglas
**Subject:** Re:

Thanks Jim. It will take me a little bit of time to send to my client as they require us to perform our own evaluation of the file but I will try to get back to you as quickly as possible.

Grace Murphy
Maynard, Cooper & Gale, P.C.
Direct 205.254.1170
Fax 205.254.1999
www.maynardcooper.com



>>> "James Douglas" <jdouglas@mcnealdouglas.com> 06/26/07 8:58 AM >>>
Grace

~~Pursuant to our conversation yesterday, my client has authorized me to settle this matter for $25,000.00. Please forward this offer to your client and apprise me of their position~~. Also, I am sending several notices of deposition to you. I understand you will object to them.

Jim

No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.476 / Virus Database: 269.9.10/876 - Release Date: 6/28/2007 10:56 AM

7/6/2007

# EXHITBIT
# B



December 6, 2005

Jo A. Wiley
1500 Harper Place
Opelika, AL 36801

Policy Holder:    Wal-Mart Stores, Inc.
Associate:       Jo A. Wiley
Policy Number:   GLT205215

Dear Ms. Wiley:

We are writing to you about your claim for Long Term Disability (LTD) benefits. These benefits are under the group insurance policy number GLT205215 for Wal-Mart Stores, Inc.

We have completed our review of your claim for benefits and have determined you no longer meet the definition of Disability under the terms of your policy. Therefore benefits are no longer payable to you beyond 11/30/05.

Page 10 of your Certificate of Insurance booklet states:
"Disabled means either Totally or Partially Disabled."

Page 5 of your Certificate of Insurance booklet states:
"Total Disability or Totally Disabled means that:
(1) during the Elimination Period; and
(2) for the next 12 months, you are prevented by:
    (a) accidental bodily injury;
    (b) sickness;
    (c) Mental Illness;
    (d) substance abuse; or
    (e) pregnancy,

from performing the essential duties of your occupation, and are under the continuous care of a Physician and as a result you are earning less than 20% of your Pre-disability Earnings, unless engaged in a program of Rehabilitative Employment approved by us.

After that, you must be so prevented from performing the essential duties of any occupation for which you are qualified by education, training or experience.

'Your occupation' includes similar job positions with the Employer which may be offered to you, with a rate of pay 60% or greater of your Indexed Pre-disability Earnings.

Benefit Management Services
Atlanta Disability Claim Office
P.O. Box 1810
Alpharetta, GA 30023-1810
Facsimile (860)392-0713

Partially Disabled means that you are prevented by Disability from doing all the material and substantial duties of your own or any occupation on a full-time basis, except that:
(1) you are performing at least one of the material duties of your own occupation on either a full-time or part-time basis;
(2) you are under the continuous care of a Physician; and
(3) you are currently earning 20% to 80% less per month than your Indexed Pre-disability Earnings due to the same injury or sickness that caused the disability."

Page 14 of your Certificate of Insurance booklet states:
"The Hartford will pay benefits until the first to occur of:
(1) the date you are no longer Disabled;
(2) the date you fail to furnish proof that you are continuously Disabled;
(3) the date you refuse to be examined, if The Hartford requires an examination;
(4) the date you die; or
(5) the date determined from the table below." (See the Maximum Duration of Benefits Table in the Schedule of Benefits on page 14)

We based our decision to deny your claim on policy language. All the papers contained in your file were viewed as a whole. This included:

(1) LTD application completed by you on 6/28/04;
(2) Medical records dated 10/20/04 through 6/9/05 from Dr. James Mathews;
(3) Medical records dated 2/23/98 through 6/9/05 from Dr. Chris Adams;
(4) Medical records dated 7/14/04 through 1/25/05 from Dr. Eric Albright;
(5) Restrictions and limitations letter dated 5/23/05 from Dr. James Mathews;
(6) Restrictions and limitations letter dated 6/13/05 from Dr. Chris Adams;
(7) Telephone call dated 6/15/05 with the office of Dr. Robert Brown;
(8) Response letter dated 6/30/05 from Dr. Chris Adams;
(9) Telephone call received 7/21/05 from the office of Dr. James Mathews;
(10) Medical Advisory Group review completed 10/12/05 by Dr. Eric Hermansen;
(11) Employability Analysis Report completed 11/4/05 by our Rehabilitative Clinical Case Manager.

In our letter dated 12/9/04 you were advised that we were reviewing your LTD claim to determine if you would continue to meet the definition of Disability as it applied to you claim effective 6/3/05. The above-referneced information was received as part of this review.

Records received document that Dr. Adams felt that you had the physical capacity to perform both sedentary and light capacity occupations. Dr. Adams further indicated that the you were restricted in your ability to sit 4 hours; stand and walk 1 hour; lift and carry occasionally up to 10 pounds; push and pull up tp 20 pounds; and that you were to avoid activities due to knee instability of climbing, balancing, stooping, kneeling, crouching and crawing. He also stated that you were limited in your ability to bend and walk. Dr. Mathews did not feel that you had capacity to perform sedentary or light occupations. He indicated that you were restricted to sitting 8 hours; stand and

walk ½ hour; lift, carry, push and pull up to 5 pounds. He did agree with Dr. Adams regarding all other restrictions.

Dr. Jones returned our request for information regarding your restrictions and limitations blank and Dr. Brown indicated that the breast reduction was not related to your disability and that full recovery was 3 weeks post operative.

In an effort to clarify your functional capacity, your claim was reviewed by Dr. Eric Hermansen. After review of all the medical records, Dr. Hermansen indicated that the medical evidence supported the ability to perform full-tine work activity within the following restrictions and limitations:

(1) avoid prolonged walking & standing;
(2) lift 10 lbs. as necessary, and 20 lbs. occasionally;
(3) sit for 8-hour workday, but may require periodic breaks for stretching;
(4) avoid repetitive stooping, bending, crouching, crawling, or kneeling;
(5) reaching with the left upper extremity should be non-repetitive;
(6) avoid excessive or repetitive grasping with the right hand;
(7) avoid repetitive flexion & extension of the neck, and repetitive reaching above shoulder level.

Dr. Hermansen attempted to contact Dr. Adams and Dr. Mathews. Dr. Hermansen was advised that Dr. Mathews had retired and that your new physician was unable to comment on your condition. Dr. Adams agreed that you would be able to perform full-time work capacity with the above restrictions and limitations.

The information you provided documents that you have a 12th grade education with an additional 4 years of college. You have worked as an Accounting Manager for 16 years.

Using this information we performed an Employability Analysis which identified several occupations for which you are qualified and are within your restrictions and limitations. The following occupations were identifed:

Accounting Clerk
Invoice-Control Clerk
Payroll Clerk

These occupations are within the restrictions and limitation outlined by Dr. Hermansen and Dr. Adams and are prevelant in the national economy.

In view of these findings, we have determined that you are not "prevented from performing the essential duties of any occupation for which you are qualified by education, training or experience" as required by the policy definition of Total Disability that applied to your claim beginning 6/3/05. You do not meet the definition of Partial Disability as you are no currently earning an income. As such, your LTD benefits will terminate on 12/1/05.

The Employee Retirement Income Security Act of 1974 (ERISA) gives you the right to appeal our decision and receive a full and fair review. You may appeal our decision even if you do not have new information to send us. You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim. If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eighty (180) days from your receipt of this letter. Your appeal letter should be signed, dated and clearly state your position. Along with your appeal letter, you may submit written comments, documents, records and other information related to your claim.

Once we receive your appeal, we will again review your entire claim, including any information previously submitted and any additional information received with your appeal. Upon completion of this review, we will advise you of our determination. After your appeal, and if we again deny your claim, you then have the right to bring a civil action under Section 502(a) of ERISA.

Please send your appeal letter to:

Claim Appeal Unit
Benefit Management Services
Hartford Life Insurance Company
P.O. Box 2999
Hartford, CT 06104-2999

If you have any questions, please feel free to contact our office at (800) 492-5678, x64486. Our office hours are 8:00 AM to 8:00 PM EST, Monday through Friday.

Sincerely,

Renee D. Fortson, Senior Examiner
Hartford Life and Accident Insurance Co.

# EXHITBIT
# C

**The Orthopaedic Clinic**

Orthopaedics
James Whatley, M.D.
B. Franklin Thomas, III, M.D.
Ronald V. Hillyer, M.D.
David W. Scott, M.D.
Frazier K. Jones, M.D.
Todd M. Sheils, M.D.

Rheumatologist
Christopher D. Adams, M.D.

Administrator
Marion R. Fuller, CMPE

*Caring for you means caring about you.*

12-16-2005

RE:   Wiley, JoAnn
      Chart # 75345

To Whom It May Concern:

This is to clarify some commentary made by the Hartford Life Insurance Company regarding long-term disability.

On 06/13/05, I prepared the document for Hartford Insurance indicating a primary diagnosis of 710.2 with a secondary diagnosis of 729.0. At that time, I rendered an opinion that Ms. Wiley could sit for hours a day, but that I had placed a maximum lifting restriction of 10 pounds and a maximum push-or-pull limitation of 20 pounds. I indicated there were difficulties with lower-body functional ability as a result of knee instability.

I received a note back from the Hartford Company asking whether or not she could receive vocational rehabilitation for light duty. A description of light duty was given to me, and I agreed that she should be allowed to pursue vocational rehabilitation in this regard. During June and early July, she was also seen by Dr. Frazier Jones who indicated that her cervical spine MRI showed cervical stenosis. He also provided her an injection, but this was of limited benefit.

I had an opportunity to see her back in clinic on August 15th. At that time, she exhibited evidence of clinical deterioration and had additional evidence of weakness and tenderness. I signed a form on September 6th reflecting the clinical changes in her condition, wherein I rendered an opinion that she was no longer capable of sitting for six to eight hours. I also indicated that "this woman has myositis, entrapment neuropathy, and cervical spondylosis."

When I saw her back on October 17th, she was certainly no better in regard to her underlying autoimmune disease. She was starting to experience dysphagia (a serious consequence of inflammatory myositis), and she had left-sided paraspinous spasm associated with sacroiliac tenderness. She did indicate that her arm was doing a little bit better, and she was no longer dropping things.

762-A East Glenn Avenue
Auburn, Alabama 36830
(334) 501-2290
Fax: (334) 501-2293

18 Medical Arts Center
121 North 20th Street
Post Office Box 2125
Opelika, Alabama 36803-2125
(334) 749-8303 • (800) 327-6519
Fax (334) 745-5243

10 Medical Park
Post Office Box 95
Valley, Alabama 36854-0095
(334) 756-3146 • Fax (334) 756-6788

*This document contains confidential information. Unauthorized disclosure or failure to maintain confidentiality is subject to penalties under Federal Law. If you received this document in error, call 800-891-0848 immediately.*

12-16-2005
RE: Wiley, JoAnn
Chart # 75345

I think that it is important to understand that Ms. Wiley has an autoimmune muscular disease which can cause weakness, along with a neurologic condition which can cause weakness, with an additional orthopedic problem that can interfere with gainful activity and ambulation. In short, the sum of the parts must be considered to constitute the whole. I get the impression that this point of view has not been satisfactorily conveyed.

Sincerely,

*[signature]*

Christopher D. Adams, M.D., FACP, FACR, CCD

CA/md/ADAM012_20051216

# EXHITBIT
# D

Hartford Life
Atlanta Disability Claim Office
P. O. Box 1810
Alpharetta, GA 30023-1810

February 28, 2006

Jo Ann Wiley
1500 Harper Place
Opelika, AL 36801

Re:   Long Term Disability Claim for Jo Ann Wiley
      Policy Holder: Wal-Mart Stores, Inc.

Dear Ms. Wiley:

This letter concerns the above-referenced claim for Long Term Disability (LTD) benefits under the above-captioned Hartford group insurance Policy GLT205215. This Policy funds Wal-Mart Stores Inc.'s LTD Employee Benefits Plan. We have completed our appeal review of this claim and have determined that you are not disabled for Any Occupation as defined by the policy.

Please refer to the enclosed copy of our letter dated December 6, 2005 for the Policy language, and list evidence contained in the claim file. We based our decision to terminate benefits on policy language, and all of the documents contained in the claim file viewed as a whole.

In response to your appeal, we reviewed all the documents contained in our claim file, and the relevant policy provisions.

We received your letter of appeal dated January 19, 2006 on January 23, 2006. You stated you spoke with the manager of Wal-Mart who stated you would not be allowed to work with the limitations outlined in the termination letter. You stated you cannot stay awake for eight hours due to the medications you take. You stated you cannot control your bladder. You stated you spoke to Dr. Adams who stated he had not released you to work and your condition is deteriorating.

In support of your appeal you provided a list of your medications. You also provided a letter dated December 16, 2005 from your rheumatologist, Dr. Christopher Adams.

As part of our appeal review, and to provide impartial medical expertise to the investigation, we sent all the medical documents in our file, except for the previous independent physician review report from Dr. Eric Hermansen, to University Disability Consortium to be reviewed by another independent physician consultant.

The independent physician who reviewed the claim is Noreen F. B. Ferrante, M.D., A.B.I.M. Diplomate in Rheumatology.

Based on the clinical information in the medical records, your musculoskeletal problems seem to be the primary issue interfering with your level of functionality at this time. Dr. Ferrante opined that restrictions to your level of functionality include sedentary work capacity, limitation of repetitive right upper extremity activities due to ulnar palsy, and restriction of repetitive reaching overhead with the shoulders due to a history of adhesive

capsulitis. Additional restrictions of avoidance of squatting and kneeling may also be warranted depending on the severity of your osteoarthritis of the knees. There is little recent information in the medical record regarding your pulmonary status and no recent information regarding this was submitted on appeal. This is also true of your reported bladder control problem, which is mentioned only once in the medical records on October 20, 2004, at which time you were prescribed medication. There is nothing further documented to suggest the medication is ineffective or that your functionality is limited as a result of bladder control issues or that your functionality is limited by drowsiness caused by medications.

We also note that the previous independent physician consultant, Dr. Hermansen, opined that you are capable of full-time work activity with specific limitations noted in your termination letter dated December 6, 2005.

According to the Employability Analysis performed based upon the restrictions and limitations as opined by Dr. Hermansen, three transferable occupations were identified that are within your physical capability level. These same occupations fit within the limitations imposed according to Dr. Ferrante's opinion. While we note that Wal-Mart Stores, Incorporated may not be able to accommodate your current level of functionality with employment, you do not meet the definition of disability for Any Occupation as it is defined in the policy.

Based upon our review, the preponderance of evidence supports your ability to perform the essential duties of Any Occupation. As such, you do not meet the definition of disability, and the decision to terminate your claim was correct.

We do uphold the decision to terminate your claim. This is our final determination, we are closing our record, and no further review will be conducted with respect to the claim.

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim. You may also bring civil action under Section 502 (a) of the Employee Retirement Income and Security Act of 1974 ("ERISA").

Please be advised that our claim decision is final as administrative remedies available under the policy have been exhausted.

Sincerely,

Mariann Morrow, Appeals Specialist
Hartford Life and Accident Company